IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02554-BNB

RONALD M. COX,

    Plaintiff,

v.

(DRDC) CORRECTIONAL OFFICER PASTILLETTI (CDOC),
NURSE DOUG OF (DRDC) (CDOC),
(DRDC) WARDEN ZAVISLAN (CDOC),
(DRDC) CAPTAIN REAUX (CDOC),
(DRDC) CAPTAIN ZERBO (CDOC),
(DRDC) LIEUTENANT CARIGAN (CDOC), and
TOM CLEMENTS, Executive Director of D.O.C.,

    Defendants.

ORDER TO DISMISS IN PART AND TO DRAW CASE
TO A DISTRICT JUDGE AND TO A MAGISTRATE JUDGE

    Plaintiff, Ronald M. Cox, is a prisoner in the custody of the Colorado Department of Corrections at the Buena Vista Correctional Facility in Buena Vista, Colorado. Mr. Cox initiated this action by filing *pro se* a Prisoner Complaint (ECF No. 1) alleging that his rights under the United States Constitution have been violated. On December 22, 2011, Mr. Cox filed an amended Prisoner Complaint (ECF. No. 9). On January 31, 2012, Magistrate Judge Boyd N. Boland ordered Mr. Cox to file a second amended complaint that clarifies how each named Defendant personally participated in the asserted constitutional violations and that complies with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. On February 28, 2012, Mr. Cox filed a second amended Prisoner Complaint (ECF No. 14).

Pursuant to 28 U.S.C. § 1915A, the Court is required to review the second amended complaint because Mr. Cox is a prisoner and he is seeking redress from officers or employees of a governmental entity. Pursuant to § 1915A(b)(1), the Court is required to dismiss the second amended complaint, or any portion of the second amended complaint, that is frivolous. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). For the reasons stated below, the Court will dismiss the second amended complaint in part as legally frivolous.

The Court must construe the second amended complaint liberally because Mr. Cox is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the second amended complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a *pro se* litigant. *See id.*

Mr. Cox's claims in this action arise out of an incident that occurred on May 28, 2011, at the Denver Reception and Diagnostic Center (DRDC) when he allegedly swallowed two razor blades that were placed in the cookies he was served with his dinner tray. Mr. Cox asserts that he realized his mouth was cut and bleeding while eating the cookies at approximately 8:30 p.m., and that he pressed the emergency call button in his cell to request medical assistance. He further asserts that Nurse Doug

responded to his cell, examined his mouth using a flashlight, stated he would be back in twenty minutes to examine Mr. Cox's injuries, but never returned. Mr. Cox contends that he experienced severe stomach pain that night and that no one responded to his continued requests for medical attention from 10:30 p.m. to 2:00 a.m.

Mr. Cox alleges that he was examined again by Nurse Doug the following afternoon at approximately 2:00 p.m. and that Nurse Doug acknowledged Mr. Cox had a lot of cuts in his mouth. He further alleges that Nurse Doug left him in a holding cell in severe pain that afternoon for two hours until he finally was transported to the emergency room at Denver Health Medical Center. Mr. Cox maintains that x-rays taken at the hospital confirmed he had swallowed two razor blades.

Mr. Cox asserts that he was released from the hospital on June 5, 2011, and taken back to the DRDC with instructions to be returned to the hospital if the razor blades did not pass through his body without complications within seventy-two hours. Mr. Cox further asserts that he was placed in a drycell at the DRDC until June 8, 2011. According to Mr. Cox, his placement in a drycell prolonged his suffering because he was forced to endure the following conditions in the drycell:

> While in drycell watch my mattress was taken from me at 6AM and was not returned until 6PM. I had [to] stay[] shackled down with belly chains, ankle chains, and my jumpsuit was taped to my body with no running water[.] I had to sleep in full restraints with no covers. Shower in restraints. I had to def[e]cate in full restraints while being record[ed] and laughed at by correctional officers. I could not wipe my buttocks until I turned around and spread my buttocks and have it recorded[.] I was giv[en] a very dirty mattress every night that was walked on, dragged across the infirmary floor where very sick inmates are housed. I had to eat my food with my hands and no ut[en]sils. Also upon sleeping on this dirty mattress it was never cleaned from its

>last use. So it still had "mace" on it which ended up burning my face.

(ECF No. 14 at 8.) Mr. Cox alleges that, when he was removed from the drycell on June 8, 2011, he was returned to the general population even though his life was in danger because one razor blade still remained in his stomach.

Based on these facts, Mr. Cox asserts three numbered claims for relief, although his first claim has two distinct subparts. He contends in claim 1(a) that he was denied due process and subjected to cruel and unusual punishment when he was served a meal tray that contained two razor blades. Mr. Cox asserts this claim against Correctional Officer Pastilletti, Lieutenant Carigan, and Captain Zerbo. He contends in claim 1(b) that he was subjected to cruel and unusual punishment by Nurse Doug when he was denied timely medical treatment both on the night he swallowed the razor blades and the following afternoon. Claim 2 is a cruel and unusual punishment claim based on the conditions in the drycell and the failure to return Mr. Cox to the hospital upon his release from the drycell. Claim 2 is asserted against Captain Reaux, Warden Zavislan, and DOC Executive Director Tom Clements. Mr. Cox asserts claim 3 pursuant to 42 U.S.C. § 1985 and he alleges in support of claim 3 that certain Defendants conspired to interfere with his civil rights by failing to return him to the hospital in accordance with the instructions provided when he was released from the hospital on June 5, 2011.

Although Mr. Cox asserts claim 1(a) as a violation of both due process and cruel and unusual punishment, the Court will not address the due process claim separately from the cruel and unusual punishment claim because Mr. Cox's due process rights in


this context are coextensive with his rights under the Eighth Amendment.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (holding that "the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners").

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm."  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  In order to assert a cognizable claim under the Eighth Amendment, Mr. Cox must allege that prison officials were deliberately indifferent to a substantial risk of serious harm.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Stated another way, Mr. Cox must demonstrate both that the injury he suffered was sufficiently serious and that prison officials acted with deliberate indifference.  *See Tafoya*, 516 F.3d at 916.  Deliberate indifference means that "a prison official may be held liable . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

As noted above, Mr. Cox asserts claim 1(a) against Correctional Officer Pastilletti, Lieutenant Carigan, and Captain Zerbo.  According to Mr. Cox, these three Defendants supervise the inmates who prepare meals in the DRDC kitchen.  Mr. Cox specifically describes how these Defendants personally participated in the alleged Eighth Amendment violation set forth in claim 1(a) as follows:

> (16) The actions of Defendant Pastiletti in not conducting pat

>search[e]s properly, supervising workstations around [the] kitchen[,] and review[ing] cam[e]ra[s] and serving me a contaminate[d] food tray by pushing this tray thr[ough] the serving window to me causing me serious bodily injury. By Defendant not properly supervising and observing said incident[,] my Eight[h] and Fourteenth Amendment right[s] w[]ere violated by Officer Pastilletti. His action[s] w[]ere done [by] virtue of his own conduct and state of mind. 42 U.S.C. § 1997a.
>
>           . . . .
>
>(20) The actions of Defendant Zerbo violated Plaintiff's 8th [and] 14th . . . Amendment rights. Mr. Zerbo is in deed the supervisor over the kitchen[.] Mr. Zerbo waits at the window and view[s] all trays made and passed[.] Mr. Zerbo also views cam[e]ra[s] to make sure food is prepared properly[.] By Mr. Zerbo not properly conducting pat search[e]s and observing work station[s] cause[d] Mr. Cox serious bodily injury. Defendant[']s actions violated my 8th [and] 14th . . . Amendment rights and violated 42 U.S.C. 1997a.
>
>(21) The actions of [Defendant Carigan] violated Plaintiff's constitutional rights. Defendant is responsible for conducting pat searches and looking after all workstations in [the] kitchen. When food is finally prepared Defendant passes trays through [the] window[.] By Defendant [not] conducting his work ethics properly caused me serious bodily injury and violated my 8th [and] 14th . . . Amendment rights and violated 42 U.S.C. 1997a.

(ECF No. 14 at 12-13.)

The Court finds that Mr. Cox fails to allege facts in support of claim 1(a) that demonstrate Correctional Officer Pastilletti, Lieutenant Carigan, and Captain Zerbo acted with deliberate indifference because he fails to allege any facts that demonstrate Correctional Officer Pastilletti, Lieutenant Carigan, and Captain Zerbo disregarded a substantial risk of serious harm. Mr. Cox does not allege that any of these Defendants actually knew there were razor blades in the food on his tray on May 28, 2011, or that

they had actual knowledge of and disregarded a substantial risk that there were razor blades in the food on his tray that evening. Their alleged failure to properly pat down and supervise inmates working in the DRDC kitchen is not sufficient, by itself, to demonstrate deliberate indifference. As a result, the Court finds that the facts Mr. Cox asserts in support of claim 1(a) do not support an arguable Eighth Amendment claim and claim 1(a) will be dismissed as legally frivolous. Because claim 1(a) is the only claim asserted against Correctional Officer Pastilletti, Lieutenant Carigan, and Captain Zerbo, they will be dismissed as parties to this action.

Mr. Cox alleges in claim 2 that he was subjected to cruel and unusual punishment based on the conditions he endured in the drycell for three days and the failure to return him to the hospital upon his release from the drycell. As noted above, Mr. Cox asserts claim 2 against Captain Reaux, Warden Zavislan, and DOC Executive Director Tom Clements. However, the Court finds that Mr. Cox fails to allege sufficient facts to demonstrate that DOC Executive Director Tom Clements personally participated in the alleged constitutional violations set forth in claim 2. Instead, Mr. Cox seeks to hold DOC Executive Director Tom Clements liable with respect to claim 2 for the following reasons:

> The actions of Tom Clements violated the 8th [and] 14th . . . Amendment rights of Plaintiff. By Mr. Clements being the Director of CDOC he is responsible for said conditions and rules and policies of drycell operations, meaning all final drafts of any policies[.] Mr. Clements approves and signs off on these policies there[by] making Mr. Clements['] supervisory responsibilities as promulgated, created, implemented or possessed responsibilities for the continued condition of that policy. When Mr. Clements signed off on said drycell policy he acted in a state of mind required to establish the alleged constitutional deprivation[.]

> Furthermore Mr. Clement[s] is responsible for correctional officers under his supervision and the saf[e]ty of my well being under his direct care demonstrates that not only did his subordinates violate my constitutional right, but that the official by virtue of his own conduct and state of mind did so as well.

(ECF No. 14 at 13.)

Magistrate Judge Boland advised Mr. Cox that personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Mr. Cox must show that each Defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each Defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). With respect to the supervisory officials, a Defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Furthermore,

> when a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2)

caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

Mr. Cox fails to allege the existence of any official DOC policy that caused the constitutional injury he allegedly suffered as a result of his placement in a drycell and his return to the general population upon his release from the drycell.  In other words, he does not identify any official DOC policy that mandates the allegedly unconstitutional conditions he endured while placed in a drycell or that mandates a return to general population upon release from a drycell regardless of medical condition.  Therefore, his conclusory allegation that DOC Executive Director Tom Clements approves all final DOC policies is not sufficient to demonstrate Mr. Clements personally participated in the alleged constitutional violations caused by Mr. Cox's placement in a drycell and his return to the general population upon release from the drycell.  As a result, claim 2 is legally frivolous to the extent it is asserted against DOC Executive Director Tom Clements.  Because claim 2 is the only claim asserted against DOC Executive Director Tom Clements, he also will be dismissed as a party to this action.

Claim 3 also will be dismissed as legally frivolous.  As noted above, Mr. Cox alleges in claim 3 that certain Defendants conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985 by failing to return him to the hospital in accordance with the instructions provided when he was released from the hospital on June 5, 2011.  The Defendants who allegedly violated 42 U.S.C. § 1985 include Captain Reaux, Warden Zavislan, and Nurse Doug.  The Court construes claim 3 as being asserted pursuant to § 1985(3), which relates to conspiracies to deprive a person of rights and privileges.

"The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive

plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Furthermore, § 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  To the extent a § 1985(3) claim can be based on a non-racially motivated private conspiracy,

> it is necessary to plead, *inter alia*:
>
> 1. that the conspiracy is motivated by a class-based invidiously discriminatory animus; and
>
> 2. that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

*Tilton*, 6 F.3d at 686.

Mr. Cox does not allege that the alleged conspiracy to deprive him of his rights was racially motivated and he fails to identify any other class-based invidiously discriminatory animus on which to base his § 1985(3) claim.  He also fails to allege any specific facts to support the existence of the asserted conspiracy.  *See Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) (noting that conclusory allegations of a conspiracy are not sufficient).  Therefore, the Court also finds that claim 3 is legally frivolous and must be dismissed.

Finally, part of the relief Mr. Cox seeks is to be released on parole.  Such a claim must be brought in a habeas corpus action.  *See Preiser v. Rodriguez*, 411 U.S. 475, 504 (1973). If Mr. Cox wishes to pursue any habeas corpus claims in this Court, he must file a separate habeas corpus action naming a proper Respondent and he must

use the proper habeas corpus application form.  Before Mr. Cox may seek habeas corpus relief in federal court, he must exhaust state court remedies for the federal claims he intends to raise.  *See Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (noting that state court remedies must be exhausted prior to seeking habeas corpus relief).  Any habeas corpus action Mr. Cox may wish to pursue is subject to a one-year limitation period.  *See* 28 U.S.C. § 2244(d).

The Court will not address at this time the merits of claims 1(b) and claim 2 to the extent it is asserted against Captain Reaux and Warden Zavislan.  Instead, the action will be drawn to a district judge and to a magistrate judge as provided in D.C.COLO.LCivR 8.2D because the Court has completed its review pursuant to D.C.COLO.LCivR 8.2C.  Accordingly, it is

ORDERED that claims 1(a) and 3 are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A(b)(1).  It is

FURTHER ORDERED that claim 2 is dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A(b)(1) to the extent the claim is asserted against DOC Executive Director Tom Clements.  It is

FURTHER ORDERED that Correctional Officer Pastilletti, Lieutenant Carigan, Captain Zerbo, and DOC Executive Director Tom Clements are dismissed as parties to this action.  It is

FURTHER ORDERED that this case shall be drawn to a district judge and to a magistrate judge.

DATED at Denver, Colorado, this   20th   day of   March   , 2012.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court