IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-02554-REB-MEH

RONALD M. COX,

      Plaintiff,

v.

NURSE DOUG OF (DRDC) (CDOC),
(DRDC) WARDEN ZAVISLAN (CDOC), and
(DRDC) CAPTAIN REAUX (CDOC),

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion to Dismiss Second Amended Prisoner Complaint

(Doc. 14) [filed May 21, 2012; docket #27].   The motion is referred to this Court for

recommendation.  (Docket #28.)  The matter is fully briefed and oral argument would not materially

assist the Court in its adjudication of the motion.  For the following reasons and based on the entire

record herein, the Court **RECOMMENDS** Defendants' motion be **GRANTED IN PART** and

**DENIED IN PART**.[1]

_____

      [1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations.  *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the

## BACKGROUND

Plaintiff initiated this lawsuit *pro se* on September 29, 2011.  (Docket #1.)  His motion for leave to proceed *in forma pauperis* was granted on October 5, 2011.  (Docket #3.)  Although Plaintiff was initially incarcerated at Limon Correctional Facility, he is now housed at the Colorado Territorial Correctional Facility in Cañon City where he remains in the custody of the Colorado Department of Corrections ("CDOC").  (*See* dockets ##1 at 2; 9 at 2; 14 at 2; 36 at 3.)

I.      **Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the operative complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) and for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the complaint, but may also consider documents attached to the complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.  *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiff's claims arise from an alleged denial of medical treatment by prison officials after he swallowed two razors in cookies that were served to Plaintiff.  (Docket #14 at 5.)  The incident occurred at dinner on May 28, 2011.  (*Id.*)  Shortly thereafter, Plaintiff noticed blood coming from

---

Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

the inside of his mouth and that it "was all cut up." (*Id.*)  Nurse Doug examined Plaintiff's mouth, advised Plaintiff to bite his jaw in order to stop the bleeding and stated that he would be back in twenty minutes to check the status of Plaintiff's injuries.  (*Id.* at 6.)  However, Nurse Doug never returned to examine the development of Plaintiff's injuries.  (*Id.*)  No medical staff attended to Plaintiff that night, despite his continued requests for medical personnel and despite reassurance from a prison officer that medical personnel was on its way.  (*Id.*)  That night Plaintiff suffered "severe stomach pain." (*Id.*)

The next afternoon, Plaintiff was taken to medical whereby he was reexamined by Nurse Doug, who told Plaintiff that he did not believe that Plaintiff had swallowed razors.  (*Id.*) Nevertheless, Nurse Doug called the doctor and the Plaintiff was sent to Denver Health Medical Center. (*Id.*)  X-rays at the hospital revealed that Plaintiff had ingested two razor blades. (*Id.* at 7.) Hospital doctors instructed prison medical staff that if the razors did not exit Plaintiff's system after "3 bowels or 72 hours," he was to be returned back to the hospital "immediately" for surgery.  (*Id.* at 7-8.)

During the next three days, Plaintiff was held in drycell where he suffered from "uncomfortable" and "humiliating" conditions, which "prolonged [his] suffering from razors in [his] system."[2] (*Id.* at 8.)  During Plaintiff's three-day drycell period, he was x-rayed daily.  (*Id.* at 9.) The x-rays revealed that one razor blade had successfully passed through Plaintiff's system without any further injury; however, one still remained.  (*Id.*)  After three days in drycell, prison officials released Plaintiff back into the general prison population instead of returning him to the hospital as

---

[2]Plaintiff's alleged drycell conditions consisted of, among others, a mace-infested mattress that Plaintiff did not have access to during the day; defecating in full restraints in front of correctional officers; an ankle chain; no running water; no shower; no utensils; and no covers.

the doctors had instructed.  (*Id.*)

## II.     Procedural History

Upon initial review of Plaintiff's original complaint, Magistrate Judge Boland directed Plaintiff to file an amended complaint within thirty days of the order.  (Docket #6.)  Plaintiff filed an "amended complaint" on December 22, 2011.  (Docket #9.)  Upon review of Plaintiff's amended complaint, Magistrate Judge Boland directed Plaintiff to file a second amended complaint within thirty days of the order.  (Docket #11.)  At Plaintiff's request, Magistrate Judge Boland extended the deadline through and including March 30, 2012.  (Docket #13.)  Plaintiff filed a Second Amended Complaint on February 28, 2012, which is the operative pleading in this action.  (Docket #14.)

Plaintiff's complaint asserts three causes of action.  In Claim 1, Plaintiff alleges that Defendants intentionally denied Plaintiff medical treatment in violation of the Eighth Amendment. This claim has been divided into two sub-claims by the Court.  (*See* docket #18 at 4.)  In Claim (1)(a), Plaintiff contends that he was denied due process of the law and subjected to cruel and unusual punishment when he was served a meal tray that contained two razor blades.  (*Id.*)  In Claim (1)(b), Plaintiff asserts that he was subjected to cruel and unusual punishment by Nurse Doug when he was denied timely medical treatment both on the night he swallowed the razor blades and the following afternoon.  (*Id.*)  In Claim 2, Plaintiff argues that Captain Reaux, Warden Zavislan, and DOC Executive Director Tom Clements inflicted cruel and unusual punishment on Plaintiff in violation of the Eighth Amendment by denying him medical treatment in response to his inadvertent ingestion of razors found in the prison food.  (Docket #14 at 8-9.)  In Claim 3, Plaintiff argues that Defendants conspired to deprive Plaintiff of his "federally guaranteed rights."  (*Id.* at 10.)

On March 20, 2012 during initial review, Judge Babcock issued an order dismissing Claims (1)(a) and 3 as legally frivolous and dismissing Correctional Officer Pastilletti, Lieutenant Carigan, Captain Zerbo, and DOC Executive Director Tom Clements as Defendants.   (Docket #18.) Therefore, the only remaining claims in this case are Claim (1)(b) against Nurse Doug and Claim 2 against Captain Reaux and Warden Zavislan.

The remaining Defendants responded to Plaintiff's Second Amended Complaint by filing the present motion to dismiss.  (Docket #27.)  Defendants argue that: (1) Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment; (2) no private right of action exists for any claims purportedly brought under 42 U.S.C. § 1997a; (3) Plaintiff fails to state a cognizable Eighth Amendment claim; and (4) Defendants are entitled to qualified immunity.

## STANDARDS OF REVIEW

### I.        Treatment of a *Pro Se* **Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see*

5

*also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.   Dismissal Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." FED. R. CIV. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

## III.   Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the

6

context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The Court will begin its analysis by addressing the immunity defenses, determining first whether Defendants in their official capacities are entitled to sovereign immunity, and second, whether Defendants in their individual capacities are entitled to qualified immunity. Within the

qualified immunity inquiry, the Court will determine whether Plaintiff states cognizable claims under 42 U.S.C. § 1997a and the Eighth Amendment.

## I.    Sovereign Immunity

Plaintiff brings this action against the Defendants in their individual and official capacities for prospective injunctive, monetary and declaratory relief.  Defendants argue that Plaintiff's official capacity claims are barred by the Eleventh Amendment.

The Court agrees that Defendants are not subject to suit in their official capacity.  Claims against state officials in their official capacities are essentially claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.1994).  Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 785-86 (1991).  Section 1983 did not abrogate the Eleventh Amendment, nor does it provide a jurisdictional basis for suit against a state official acting in his or her official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not

be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past"
or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159
F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff seeks monetary damages, a judgment "declaring the facts [sic] of defendants
. . . in fact violated the right of [Plaintiff] under the 8th and 14th Amendments," and an award of
"general inju[n]ctive relief of a pardon to immediately release Plaintiff ... and to vacate sentence and
parole period." (Docket #14 at 15-16.) As set forth above, Plaintiff's requests for monetary
damages and for a declaration that Defendants violated his rights in the past do not fall under the
*Young* exception to Eleventh Amendment immunity. Further, Plaintiff's request for injunctive relief,
while prospective, is an improper request in a Section 1983 case. *See Nelson v. Campbell*, 541 U.S.
637, 643 (2004) (describing claims seeking injunctive relief challenging the fact of conviction or
the duration of a sentence as "core" habeas corpus claims); *see also United States v. Furman*, 112
F.3d 435, 438 (10th Cir. 1997) (noting that claims "go[ng] to the execution of a sentence ... should
be brought against defendant's custodian under 28 U.S.C. § 2241.").

Finding no exception pursuant to *Young*, the Court concludes that Plaintiff's claims against
Defendants in their official capacities in this case are barred by the Eleventh Amendment.
Therefore, the Court respectfully recommends that the District Court grant Defendants' motion in
this regard and dismiss Plaintiff's claims against Defendants in their official capacities.

## II.     Qualified Immunity

Defendants assert that they are entitled to qualified immunity for claims against them in their
individual capacities. Qualified immunity protects from litigation a public official whose possible
violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.

*See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*  When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 555 U.S. at 232-44.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

In this case, the Court will begin by analyzing each of Plaintiff's remaining claims and determining whether Plaintiff has plausibly established a violation of his rights; if so, the Court will proceed to determine whether Plaintiff's rights were clearly established at the time of the violation.

A.      42 U.S.C. § 1997a

Defendants argue that 42 U.S.C. § 1997a does not provide a private right of action for Plaintiff's claims.  To the extent that either of the remaining claims in the Second Amended

Complaint may be construed as "claims" pursuant to § 1997a (*see* docket #14 at 9, 12-14), the Court agrees.

Specifically, Plaintiff alleges that Captain Reaux acted in "violation of" 42 U.S.C. § 1997a when she subjected Plaintiff to "egregious and flagrant conditions" in drycell.  (*See* docket #14 at 12.)  Plaintiff further alleges that Warden Zavislan violated 42 U.S.C. § 1997a "by not following through with doctor's order [sic] to return [him] to the clinic."  (*Id.*)

The statute itself affords the *Attorney General* the capability to bring suit against any official or employee on behalf of the State who is subjecting persons residing in an institution to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.  42 U.S.C. § 1997a(a) (1996).  The statute is part of the Civil Rights of Institutionalized Persons Act ("CRIPA").  *See Callahan v. Sw. Med. Ctr. of Lawton*, 178 F. App'x 837, 840 (10th Cir. 2006).  According to the CRIPA, the Plaintiff does not have a private right of action.  *Id.* (citing 42 U.S.C. § 1997a(c) (1996)).

Because no private right of action exists for any claims brought under 42 U.S.C. § 1997a, the Plaintiff wrongly asserts such claim against the Defendants.  Therefore, the Court recommends that the District Court grant Defendants' motion regarding Plaintiff's § 1997a claims, to the extent they are construed as such, and dismiss them accordingly.

B.    Eighth Amendment Claims

Notably, in addition to his Eighth Amendment claims, the Plaintiff also asserts claims under the Fourteenth Amendment for violations of his rights to due process against all three Defendants in connection with the alleged denial of adequate medical care.  (Docket #14 at 6, 8-9.)  However, as the Court previously ordered in its motion to dismiss in part, the Plaintiff's due process rights in

this context are coextensive with his rights under the Eighth Amendment; therefore, the Court will address these claims solely through its Eighth Amendment inquiry.  (Docket #18 at 5); *see also Whitley v. Albers*, 475 U.S. 312, 327 (1986)) ("[I]n these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause").

In Claim (1)(b), Plaintiff alleges that he was subjected to cruel and unusual punishment by Nurse Doug when he was denied timely medical treatment both on the night he swallowed the razor blades and the following afternoon.  (*See* docket #14 at 5-6.)  In Claim 2, Plaintiff alleges that he was subjected to cruel and unusual punishment by Captain Reaux and Warden Zavislan based on the drycell conditions he endured for three days and the Defendants' failure to return him to the hospital upon his release from drycell.  (*See id.* at 8-9.)  For purposes of clarity and organization, Claim 2 will be divided into two sub-claims: Plaintiff's drycell conditions; and Defendants' alleged deliberate indifference to Plaintiff's prescribed medical treatment.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health."  *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir.

2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).  "Moreover, a 'delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine*, 241 F.3d at 1276).  The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.  *Id*. (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)) (internal quotations omitted).  A delay in medical treatment that is unintentional or unavoidable, even though it may result in the inmate suffering additional harm, is not actionable. *See, e.g., Estelle*, 429 U.S. at 104-05 ("indifference is manifested . . . by prison guards in *intentionally* denying or delaying access to medical care") (emphasis in original).

The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).  To prove a claim of deliberate indifference predicated on the delay in providing medical care, an inmate must show: (i) that he suffered from a serious medical need; (ii) that medical care to address that need was unnecessarily delayed; (iii) that the delay

manifested the defendant's subjective disregard for the inmate's needs; and (iv) that the delay caused the inmate to suffer substantial harm, whether in the form of significant pain or permanent physical injury. *Grassi v. Corr. Corp. of Am.*, No. 07-cv-00944-MSK-KMT, 2008 WL 5172154, at *5 (D. Colo. Dec. 9, 2008) (citing *Estelle*, 429 U.S. at 104-05).

### 1.    *Claim (1)(b) - Denied Medical Treatment*

Plaintiff alleges that Nurse Doug denied him medical treatment after he ingested two razor blades when eating dinner, causing him a "serious bodily injury." (Docket #14 at 5.) Beginning with an analysis of the objective component of the claim, on its face, the consumption of razor blades appears to be a serious medical need. However, the proper Eighth Amendment inquiry analyzes the harm suffered that stems from the ingestion, not the mere fact that Plaintiff consumed two razor blades. *Callahan*, 471 F.3d at 1159. While Plaintiff alleges he suffered "severe stomach pain" the night he ingested the blades, his Second Amended Complaint does not allege any further injuries stemming from his consumption of the razor blades. (Docket #14 at 6.) Plaintiff also fails to allege how Nurse Doug's medical treatment of Plaintiff "resulted in substantial harm." *Mata*, 427 F.3d at 751.

At the same time, however, x-rays of Plaintiff's stomach taken at the hospital allegedly revealed that he had ingested two razor blades. This type of injury would be one "that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. According to the allegations, at least one medical doctor at the hospital Plaintiff visited opined that consumption of razor blades, if left untreated, could potentially result in more serious injuries. (Docket #14 at 8.) The hospital doctor instructed prison medical staff to return Plaintiff to the hospital "immediately" after the 72-hour drycell period if Plaintiff had any remaining razor

14

blades in his system.  (*Id.*)  Such instruction implies that a razor blade in the Plaintiff's system, while not necessarily requiring immediate medical attention, could prove to be a "sufficiently serious" medical need over the long run.  Medical needs that become sufficiently serious over the long run have met the objective component in Eighth Amendment analysis.  *See, e.g., Harrison v. Barkley*, 219 F.3d 132, 137 (2nd Cir. 2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need.'").  Therefore, the Court finds that Plaintiff has alleged a sufficiently serious medical need to meet the objective component of his Claim (1)(b) for violation of the Eighth Amendment against Nurse Doug.

With respect to the subjective component, Plaintiff must allege that Nurse Doug acted with deliberate indifference.  As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference.  In the context of § 1983 suits under the Eighth Amendment, a defendant is not required to show that he made a correct or even prudent decision in diagnosing or treating a plaintiff's medical condition.  *Braxton v. Wyandotte Cnty. Sheriff's Dep't*, 206 F. App'x 791, 793 (10th Cir. 2006) ("inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not violate the Eighth Amendment.")  "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."  *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

In *Self*, the Tenth Circuit held that the "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."

*Id.* at 1232. "[D]ecisions as whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's missed diagnosis or delayed referral is not actionable. *Id.* "Obviousness" may arise in cases where: (1) a medical professional is aware of his inability to provide adequate treatment but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

In this case, Plaintiff alleges that Nurse Doug's delay in medical treatment constituted "callous indifference" and subjected Plaintiff to cruel and unusual punishment. (Docket #14 at 6.) According to the allegations, however, Nurse Doug was one of the first prison medical staff to examine the Plaintiff after he consumed the razor blades. (*Id.*) Nurse Doug also examined Plaintiff before he was taken to the hospital where it was confirmed that Plaintiff had ingested razor blades. (*Id.*) As such, Nurse Doug investigated Plaintiff's injuries before Defendants knew the extent of Plaintiff's injuries and medical needs. After the second examination, apparently due to uncertainty as to the cause of Plaintiff's injuries, Nurse Doug called a doctor and sent Plaintiff to the hospital. (*Id.*) Thus, it is not the case that Nurse Doug simply acted indifferently.

While Plaintiff concedes that Nurse Doug provided him with some degree of medical attention, he argues that Nurse Doug should have conducted a more thorough examination and investigated Plaintiff's injuries at an earlier time. As noted above, decisions of this nature traditionally fall within the scope of a physician's medical judgment and are, therefore, not actionable under the Eighth Amendment absent a showing of obviousness. *See Self*, 439 F.3d at

16

1232. The Plaintiff's allegations do not follow any of the examples suggested by the Tenth Circuit in *Self*.

Based on the facts alleged by Plaintiff, Nurse Doug clearly provided medical treatment for Plaintiff's injuries. (*See* docket #14 at 5-6.) The allegations demonstrate that Nurse Doug's decision not to continue to examine Plaintiff after he had already completed two examinations was within his discretion as a medical provider, as it was not "obvious" at the time of Plaintiff's treatment that further action was necessary. As such, Plaintiff has not met the subjective component of his Eighth Amendment claim. Therefore, the Court recommends the District Court find that Nurse Doug is entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim, and that the District Court grant Defendants' motion to dismiss Claim (1)(b) accordingly.

2. *Claim (2)(a) - Drycell Conditions*

Plaintiff alleges in Claim 2 that Captain Reaux and Warden Zavislan subjected him to cruel and unusual punishment. Specifically, they "deliberately put [his] life and health in jeoperdy [sic] by placing [him] back in a holding cell with razors still in [his] system." (*Id.* at 8.) Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders pay for their offenses. *Penrod*, 94 F.3d at 1405. "The Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). An important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. *Id.*

A prison official may be held liable for Eighth Amendment violations in denying humane conditions of confinement only if the official knows of and disregards an excessive risk to inmate

health and safety. *Id.* at 1310 (quoting *Farmer*, 511 U.S. at 837).  It is not enough to establish that the official should have known of the risk of harm. *Id.*  In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. *Barney*, 143 F.3d at 1310.  First, the deprivation alleged must be objectively sufficiently serious, depriving the inmate of the minimal civilized measures of life's necessities. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (internal quotations omitted).  Second, the official must have a sufficiently culpable state of mind, which in this context means the official must exhibit deliberate indifference to a substantial risk of serious harm to an inmate. *Id.* (quoting *Farmer*, 511 U.S. at 834).

Here, Plaintiff fails to allege how the drycell conditions he faced were "objectively sufficiently serious." *Barney*, 143 F.3d at 1310.  Instead, Plaintiff plainly alleges that being held in drycell simply "prolonged" his suffering while razors remained in his system.  (Docket #14 at 8.) Plaintiff alleges he was kept in drycell for seventy-two hours and then promptly released at the end of the ordered time period.  (*Id*. at 9.)  While the alleged conditions appear to be uncomfortable, they were only temporary and a precautionary means by prison officials to make sure the razor blades had left the Plaintiff's system.  (*Id.* at 8.)  Courts have held that worse conditions over a longer period of time than those alleged by the Plaintiff here do *not* constitute valid Eighth Amendment claims. *See, e.g., White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five-day stay in "filthy, roach-infested cell" not unconstitutional).  Therefore, the Court must conclude that Plaintiff has failed to allege the required objective element of his Eighth Amendment claim against Defendants Reaux and Zavislan regarding

his drycell conditions.  However, even if the Plaintiff had met the objective component, the Plaintiff fails to meet the subjective component of his drycell conditions claim.

To meet the subjective requirement, Plaintiff must allege that Captain Reaux and Warden Zavislan exhibited "deliberate indifference to a substantial risk of serious harm to [him]." *Barney*, 143 F.3d at 1310 (quoting *Farmer*, 511 U.S. at 834).  Many courts have equated deliberate indifference with recklessness. *Farmer*, 511 U.S. at 836 (citing *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993); *Manarite v. Springfield*, 957 F.2d 953, 957 (1st Cir. 1992); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991)).  In *Farmer*, the Supreme Court held that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official both must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Id.* at 837.

Here, Plaintiff has failed to allege that Captain Reaux and Warden Zavislan knew of and disregarded an "excessive risk" to Plaintiff's health or safety when he was placed in drycell temporarily for three days.  The allegations indicate that the drycell mandate was part of Plaintiff's treatment in order to ensure that the razor blades Plaintiff ingested would pass through his system safely.  According to Plaintiff's own allegations, the drycell placement was only in response to Plaintiff having ingested the razor blades.  (Docket #14 at 8.)  Because of the extent of Plaintiff's injury, the drycell appears to be a proper and effective means to treat Plaintiff properly.  According to the allegations, at the time of Plaintiff's drycell detention, the only injuries he alleges stemming from eating the razor blades occurred over a week prior to the beginning of his drycell stay. Consequently, the Plaintiff's allegations do not demonstrate that Captain Reaux and Warden

Zavislan acted recklessly in response to Plaintiff's injury.  As such, the Court finds that Plaintiff has not sufficiently alleged the subjective requirement of his Eighth Amendment claim against Captain Reaux and Warden Zavislan regarding the conditions he faced in drycell.  Therefore, the Court recommends the District Court find that Captain Reaux and Warden Zavislan are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim regarding his drycell conditions, and dismiss Plaintiff's Claim (2)(a).

3.    *Claim (2)(b) - Deliberate Indifference to Prescribed Medical Treatment*

Plaintiff further asserts in Claim 2 that Captain Reaux and Warden Zavislan subjected him to cruel and unusual punishment when they failed to return Plaintiff to the hospital after one razor blade remained in his system.  (Docket #14 at 8.)  As previously noted, x-rays of Plaintiff's stomach were taken at the hospital revealing that he had ingested two razor blades.  A doctor there ordered that Plaintiff be returned to the hospital if the razor blades did not pass through the Plaintiff's system. Accordingly, Plaintiff's injury constitutes a sufficiently serious medical need as "one that has been diagnosed by a physician as mandating treatment." *Sealock*, 218 F.3d at 1209.  Thus, the Court finds that Plaintiff has properly alleged a sufficiently serious medical need to meet the objective component of Claim (2)(b) against Captain Reaux and Warden Zavislan.

With respect to the subjective component, Plaintiff  must demonstrate that Captain Reaux and Warden Zavislan acted with deliberate indifference to his serious medical need.  *See Farmer*, 511 U.S. at 834.  A prison official may be held liable when he acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.  The official both must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw

the inference. *Id.* at 837. The deliberate indifference standard "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care *or intentionally interfering with the treatment once prescribed.*" *Estelle*, 429 U.S. at 104-05 (emphasis added). This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Id.* at 105. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. *Id.*

Here, the allegations demonstrate that Captain Reaux and Warden Zavislan were aware that Plaintiff had ingested two razor blades as hospital x-rays revealed. (Docket #14 at 8.) In addition, the Defendants were cognizant of the fact that Plaintiff still had one razor blade remaining in his system when he was released from drycell to the general prison population. (*Id.* at 9.) According to the Second Amended Complaint, Plaintiff was "x-rayed every day including the morning of [his] release from drycell," which "revealed that [he] still had one remaining razor in [his] stomach." (*Id.*) When Plaintiff was originally examined at the hospital, doctors allegedly told prison medical staff "that if razors do not exit Plaintiff's system that he is to be returned back to the emergency room immediately." (*Id.* at 8.) While Plaintiff does not specify at what point he should have been returned to the emergency room if the blades had not passed through his system, construing Plaintiff's complaint liberally, it would appear that hospital doctors prescribed his return "immediately" upon completion of his three-day drycell stay. (*Id.*) Plaintiff alleges Captain Reaux and Warden Zavislan were aware that Plaintiff faced a substantial risk of serious harm if the razor remained in Plaintiff's system, as the hospital doctors ordered Plaintiff back to the hospital immediately if any razors remained in his system. (*Id.*) Captain Reaux and Warden Zavislan,

therefore, allegedly knew of Plaintiff's serious medical condition, and despite this knowledge, failed to ensure that he received treatment. *See Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) (concluding that prison medical staff's knowledge of a plaintiff's serious medical condition, coupled with their failure to ensure plaintiff received medical treatment, could constitute deliberate indifference within the context of the Eighth Amendment).

Thus, the allegations demonstrate that Captain Reaux and Warden Zavislan disregarded a "substantial risk of serious harm" to Plaintiff by failing to return him to the hospital upon completion of his three-day drycell period as instructed by hospital doctors. *See Farmer*, 511 U.S. at 847. Accordingly, the Court finds that Plaintiff has met the subjective component of his Eighth Amendment claim against Captain Reaux and Warden Zavislan by Plaintiff's allegations that they failed to return him to the hospital with one razor blade remaining in his system upon the completion of Plaintiff's drycell stay.

Further, the Court finds that Plaintiff's Claim (2)(b) was clearly established at the time of the incident. If a plaintiff establishes a violation of a constitutional or statutory right he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in defendant's position would have known that his conduct violated that right. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139,

1151 (10th Cir. 2006).

Here, the allegations are that the Defendants knew Plaintiff had a razor blade in his system after the three-day drycell period and knew that the doctor had ordered Plaintiff returned to the hospital if a razor remained in his system after the drycell period.  It has been clearly established since 1976 that a prison official's failure to act in accordance with prescribed medical instructions can give rise to an Eighth Amendment claim.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Thus, the Court recommends that the District Court find Captain Reaux and Warden Zavislan are not entitled to qualified immunity from Plaintiff's Eighth Amendment claim regarding the Defendants' deliberate indifference to Plaintiff's prescribed medical treatment, and that the District Court deny Defendants' motion to dismiss Claim (2)(b) accordingly.

## CONCLUSION

The Court concludes that the Defendants, sued in their official capacities, are entitled to sovereign immunity for Plaintiff's claims against them.  The Court further finds that Nurse Doug is entitled to qualified immunity as to Claim (1)(b), and Captain Reaux and Warden Zavislan are entitled to qualified immunity as to Claim (2)(a).  However, Captain Reaux and Warden Zavislan are not entitled to qualified immunity as to Claim (2)(b).  Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Second Amended Prisoner Complaint (Doc. 14) [filed May 21, 2012; docket #27] be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Respectfully submitted at Denver, Colorado, this 30th day of July, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge